**SEISMIC EXPLORATIONS, Inc., et al. v. DOBRAY et al.**
No. 11434.

Court of Civil Appeals of Texas. Galveston.
Feb. 25, 1943.

Rehearings Denied April 1, 1943.

V. Watkins McLeod, Terry, Cavin & Mills, and Andrews, Kelley, Kurth & Campbell, all of Galveston, and Richard Burns, of Houston, for appellant Seismic Explorations, Inc.

Don Emery and Rayburn L. Foster, both of Bartlesville, Okl., and R. K. Batten and Vernon Elledge, both of Houston, for appellant Phillips Petroleum Co.

Ressel & Ressel, of Galveston, and Albert J. DeLange, Frank A. Stamper, and Robert P. Beman, Jr., all of Houston, for appellees.

CODY, Justice.

This suit was brought by Mike Dobray and wife, Elsie K. Dobray (now Mrs. Tom Mitchell), against Seismic Explorations, Inc.; against Frank F. Reynolds, its President; and against Phillips Petroleum Company, for damages to plaintiffs' home, consisting of cracks in the walls and floors, alleged to have been caused by vibration resulting from explosions of charges of dynamite used in a reflection seismograph test. No contention is made that any physical trespass was made upon plaintiffs' land by defendants. Before the case was tried, the wife of Dobray divorced him and married Thomas Mitchell, who became a party plaintiff in the case.

Plaintiffs alleged that they were the owners of a home, which was of hollow tile and brick construction, in Galveston County, and that said house and home constituted the residence of plaintiffs, and, prior to the injuries complained of, was of the reasonable value of $15,000; the petition further alleges that the complained of explosions also "cracked, damaged and injured the garage and outhouses of these plaintiffs. That by reason of such acts plaintiffs have suffered damages and injury to the extent of" $12,500.

Seismic Explorations, Inc. (hereafter called Seismic), and Frank F. Reynolds (hereafter called Reynolds) answered with a general demurrer and general denial, and pled that any damaged condition of plaintiffs' house was not caused by the actions of said defendants, but by conditions over which they had no control, and further answered that in conducting their operations, said defendants exercised such care as is customarily exercised by a person of ordinary prudence engaged in the same or similar business, under the same or similar circumstances, and exercised same under permits procured from the land owners where exercised and "conducted such operations in a careful, cautious and prudent manner and in the usual and customary manner; * * * and * * * used only such amounts of explosives as were reasonably necessary, which amounts were not excessive and were insufficient to cause any damage whatever to plaintiffs' house."

Defendant Phillips Petroleum Company (hereafter called Phillips) answered with a general demurrer and general denial.

Over objections by defendants that they were entitled to an instructed verdict, the court submitted the case to the jury upon special issues, and upon the answers of the jury, the court rendered judgment for $8,000 damages for plaintiffs.

The proof showed that on October 14, 1938, the Phillips, acting through its duly authorized representative, called Reynolds, president of the Seismic, on the telephone and employed the Seismic to send one of its crew to the League City area to do certain specified reflection seismograph

exploration based on a discovery well. A definite pattern for the placing of the shots to be made was agreed upon. Under the agreement Phillips was to pay for the work at so much per month for the cost of the crew and other charges. It was also agreed that the agreement was to be reduced to writing. The written form of the agreement was prepared by Seismic and by it executed on November 14, 1938, and by Phillips executed nine days later. The written form of the contract carried forward the provision that Seismic was an independent contractor, that Phillips was interested only in the results attained, and that Phillips agreed "to indemnify said Seismic against and to pay and satisfy any and all of the judgments that may be rendered against said Seismic in favor of any land owner or in favor of anyone else * * * save in so far as same may prove to be the consequence of negligence or willful misconduct on the part of Seismic." It should here be added that Seismic paid the salaries of its employees and Phillips had no power to discharge them, nor did it have any supervisors to accompany such crew when it did the work.

The evidence showed that reflection seismograph exploration method had for some years supplanted the refraction seismograph method in the Gulf Coast country; and the reflection seismograph exploration method was employed by the Seismic crew upon the occasion in question. The refraction method differs from the reflection method in that much heavier charges of dynamite are used in the former than in the latter. The normal charge of dynamite used for an explosion in refraction method consists of from 300 to 400 pounds of dynamite, whereas a charge of dynamite used by the reflection method consists of 2 pounds or less; this being placed at the bottom of a hole bored twenty feet or deeper and covered with water before being exploded. Upon the occasion in question, the testimony of the defendants was that the crew in no instance exploded a charge of dynamite weighing more than half a pound. No dynamite was exploded on plaintiffs' premises and none nearer than 100 feet to plaintiffs' house. (Plaintiffs alleged that their house was damaged by the dynamite discharged 100 feet from it.) The dynamite, which was discharged approximately 100 feet from plaintiffs' house, was exploded at the bottom of a hole, located in Ross' pecan orchard, which was 28 feet deep and the dynamite at the bottom of the hole was covered with water. The undisputed evidence was to the effect that such a charge, when exploded, would give only a dull thud which could be heard only a few feet away and could not have been heard at plaintiffs' house, and that the vibrations set in motion could not have been felt at plaintiffs' house. Indeed, the testimony was that upon the surface of the earth, the vibrations of such an explosion would be similar to those set in motion by a passing automobile in that they could not be detected by the senses at any greater distance from the hole where exploded than vibrations could be detected from a passing automobile. As against that evidence, plaintiffs introduced testimony to the effect that the detonations were heard half a mile off and shook their house so violently that dishes and cups were shaken off of a three-foot shelf and fell to the floor. Tom Mitchell, a nominal plaintiff herein, was painting the house at the time, and noticed that cracks showed up in the walls where there had been no cracks at the time he had painted said walls. Other witnesses testified to such cracks appearing after the dynamite was exploded.

The points urged by defendants Reynolds and Seismic on appeal are:

1. A verdict should have been instructed for Reynolds, his only connection with the matter being that he was the president of Seismic.

2. A verdict should have been instructed for Seismic, as its acts, as a matter of law, could not have been the proximate cause of any damage to plaintiffs' house.

3. In the absence of testimony that the Seismic employees were not competent, there was no duty on the part of Reynolds or Seismic to give instructions to said employees as to the amount of the dynamite to be used.

4. The court erred in submitting inquiries concerning the failure of Reynolds and Seismic to instruct their employees in regard to the amount of the dynamite to be used, because plaintiffs had pleaded specific acts of negligence which did not include any allegation of any such failure as an act of negligence.

5. The court erred in submitting issues (special issues 28 and 29) inquiring about the reasonable market value of the Dobray property as improved, just before and after the alleged damage thereto, because there were no pleadings to support such issues,

and under the pleadings such issues submit an incorrect measure of damages.

6. The court erroneously admitted testimony in regard to the reasonable market value just before and just after the claimed damage, over the objection there were no pleadings to support such testimony.

7. The court erroneously submitted issues (Nos. 5, 8, 11, and 14) as to damage other than that sued for, the damage to plaintiffs' house being all the plaintiffs sued for.

8. The award of damages in the sum of $8,000 is excessive.

9. The court should have, in response to defendants' motion, declared a mistrial because of improper conduct and inflammatory testimony of plaintiff Mike Dobray.

10. The court erred in submitting special issues 21–24, inquiring if Seismic entered into a third-party contract with Ross (the owner of the land shot) for the benefit of Dobray, for reasons specified by defendants.

11. The answers of the jury to special issues 21–24, inclusive, are without support by competent testimony, and are against the great weight of the evidence.

12. The court erred in grouping plaintiffs' issues together, followed by issues of alleged damages, then followed by defendants' issues, which was duly objected to on the ground that it advised the jury of the effect of their answers.

13. Plaintiffs' counsel, in argument, advised the jury of the effect of their answers to the issues.

14. Defendants adopt Point No. 2, of their co-defendant Phillips.

Points urged by defendant Phillips upon appeal are these:

1. The court erred in overruling this defendant's motion for an instructed verdict.

2. The court erred in submitting special issue No. 4, over objection.

3. The court erred in overruling defendants' motion to declare a mistrial because of Mike Dobray's testimony and conduct which was not responsive to any question.

4. This defendant adopts every point urged by its co-defendants.

 The evidence upon the trial showed as a matter of law, contrary to plaintiffs' assumption, that the contract between Phillips and Seismic did not contemplate any blasting operations. According to Webster, blasting means "the practice or occupation of rending heavy masses, especially of rock, by means of explosives, as in oil-well drilling, quarrying, etc." It is obvious that heavier charges of dynamite are required to rend heavy masses such as rocks than are required merely to produce and set in motion vibrations. The undisputed evidence showed that the maximum charge of dynamite which it was necessary or proper to be used in the test then being made was a charge of dynamite weighing not more than half a pound. The contract contemplated that no greater charges of dynamite would be exploded than were normal for the purpose of making reflection seismograph tests. It is true that in the case of Cisco & N. E. Ry. Co. v. Texas Pipe Line Co., Tex.Civ.App., 240 S.W. 990, which dealt with blasting operations, stone, cast upon the land of another, was so large and cast with such force as to break a pipeline whereby 500 barrels of oil were lost; it was there held: That the Ry. Co. which had engaged an independent contractor to do the blasting was liable for the damages caused, *because the contract provided for the performance of work which was intrinsically dangerous, however skillfully performed.* That case is cited in an annotation to a paragraph in 19 Tex.Jur., page 467, which reads in part: "as to explosives set off by an independent contractor, it has been said that ordinary blasting operations in themselves are not considered as so intrinsically dangerous as to render the employer liable for the contractor's negligent acts; that is, the employer is not liable by reason of employing a contractor to do the work; there is not imposed upon him the absolute duty to take special precautions to avoid injuries from the contractor's operations." So we see that the law recognizes that even blasting operations are not per se intrinsically dangerous. That the danger depends upon *the size of the explosive discharge is* obvious, and where the amount of explosive used is so small that it will not cause a shock great enough to do more than set up vibrations, and not great enough to amount to *blasting,* such operation cannot be called intrinsically dangerous. We have seen that the Phillips did not engage to have work performed which was "intrinsically dangerous, no matter how skillfully performed". Further, we do not agree with the contention of plaintiffs that the Phillips controlled the method by which the work was

done. It is true that the Phillips gave Seismic information of what data they wanted to obtain. The giving of this information to the Seismic did not constitute instructions to the crew of what to do and how to do it any more than the plans and specifications furnished to a building contractor would constitute instructions to his workmen. The plans and specifications of a house to be constructed are the basis of the contract, but they do not make the owner of the house to be constructed the master of the contractor's servants, so as to render him liable for their negligence. Except for the fact the Phillips joined in the motion to have the jury dismissed, which we hereafter refer to, we would hold that the court should have instructed a verdict in favor of Phillips.

■ Reynolds, as stated above, was the president of Seismic and was its general manager, and as such, made the contract with Phillips. He ordered the work done which he had contracted with the Phillips for the Seismic to do, but he was not in personal charge of the operations and did not even go upon the ground. He was not liable for any negligence which, the crew may have been guilty of under the doctrine of respondeat superior, and plaintiffs make no contention that he is liable under such doctrine. They urge, however, that though he can not be held liable to them for any actions of nonfeasance, that he was shown by the evidence to have been guilty of misfeasance. Since, as noted, Reynolds was not in personal charge of the operations upon the ground, such contention is tantamount to claiming that, as president, he could not delegate the performance of said operations to the operating department of his corporation. As we understand plaintiffs' contention, it is that the work to be performed was intrinsically dangerous no matter how skillfully performed, and that the crew should have been specially instructed in advance how to perform it. There was no evidence that they were not competent and that they did not know how to perform their work. If the crew was ignorant of how to perform its labors, the corporation would undoubtedly have been responsible for injuries caused by its incompetent men, but we do not see how the president would be personally liable to a third party for the fault of the corporation, if it used ignorant men. If it were a part of the president's duty to train and instruct employees and he defaulted in such performance, and, if as a result the company suffered damages, the president would have been guilty of nonfeasance and liable to his company. As said in Conrick v. Houston Civic Opera Ass'n, Tex.Civ. App,. 99 S.W.2d 382, 384, "the agent is personally liable to third persons for his own misfeasance and positive wrong, but he is not in general liable to third persons for his own nonfeasance or omission of duty in the course of his employment." The evidence totally failed to sustain a judgment against Reynolds, and, but for the fact that he joined in a motion to have a mistrial declared and the jury discharged, as hereinafter indicated, it would have been the court's duty to instruct a verdict in his favor.

■ The case of Universal Atlas Cement Co. v. Oswald, Tex.Com.App., 157 S.W.2d 636, was a blasting case. In that case the plaintiffs brought suit to recover damages for having their wells dried up as a result of the defendant negligently discharging excessive amount of explosives at a point not on their land, and some distance therefrom. In the case at bar, the plaintiffs sued for damages, pleading, among other things, that the damages to their house were negligently caused by defendants using excessive amounts of explosives. Under the authority of the Universal Atlas Cement Co. case, supra, we hold that plaintiffs made a case to submit to the jury.

■ Special issue No. 28 inquires: "What was the reasonable market value, if any, of the property, as improved, of plaintiff, Mike Dobray and Mrs. Elsie Mitchell in October, 1938, just before the dynamite was exploded in the vicinity of said property by employees of Seismic Explorations, Inc.?" And Special issue No. 29 propounds the same inquiry as to the value immediately after the explosions. The defendants objected to the submission of each of the issues because they were too vague to accurately describe what property of plaintiffs was inquired about, and because plaintiffs' pleading did not seek to recover any damages to plaintiffs' land, but sought only to recover damages to their house; that, therefore, the special issues submitted were not the proper measure of damages under plaintiffs' pleading.

In Houston & T. C. Ry. Co. v. Smith, Tex.Civ.App., 46 S.W. 1046, 1047, opinion by Judge Williams while on this court, a case in which the destruction by fire of certain buildings, fences, fruit trees and

shrubbery upon the premises of the appellee was alleged, it was said: "By its charge the court below instructed that, if the jury found for the plaintiff, they should, in estimating the damage resulting from the destruction of or injury to the buildings, shrubbery, and fruit trees, allow the difference between the market value of the land, with such structures, trees, etc., upon it, at the time of the fire, and such value just after the fire. This may be the correct way in which to determine the damage which plaintiff would be entitled to recover, but the petition is not sufficient to support such a recovery. Such damages are not claimed in the pleading, nor are facts alleged from which the right of plaintiff to recover them can be deduced as a legal conclusion. *If the facts stated were such that the court could see that the right of plaintiff is to recover for such an injury to his freehold, the prayer for judgment for the value of the property destroyed would not prevent the court from awarding the proper relief under the general prayer.*" (Emphasis ours.) Defendants are, therefore, right in so far as they claim that in order to justify the submission of said special issues to the jury, plaintiffs should, in their pleading, have alleged damages to their land. Plaintiffs' pleading is somewhat confused. The word "home" seems to be used therein as meaning house, for it alleges that the home is built of hollow tile and brick, and that said home and house constitute the residence of plaintiffs. However, the word "home" is more comprehensive than the word "house". It is broad enough to include the land upon which the house stands. The petition alleges that the explosion also "cracked, damaged and injured the garage and outhouses of these plaintiffs. That by reason of such acts of such defendants, said house has suffered damage and injury, *and plaintiffs have suffered damage and injury to the extent of*" $12,500. (Emphasis ours.) The pleading being thus ambiguous, defendants could have, by special exceptions, driven plaintiffs to clarify their meaning. In the absence of such special exceptions, we must hold that by giving every reasonable intendment to such pleading, plaintiffs alleged injury to their land as well as to their house, garage and outhouses, and if so, the court did not err in submitting said special issues.

■ We have considered it necessary to write the foregoing opinion, as the points are likely to arise upon another trial. We think the judgment must be reversed and the cause remanded because of the following:

This case was tried at the time General MacArthur was making his glorious stand upon Bataan Peninsula. While plaintiff Dobray was testifying upon the witness stand and being cross-examined by defendants he was asked questions which he answered as follows:

"Q. How many children have you? A. Four.

"Q. Two of them are still at home? A. Yes; one is in the United States Marines and myself is an ex-service man on the Philippines thirty-one years ago. Here is a discharge from the United States Army.

"Q. I have one of those, too. A. I have a picture here of us in the island," whereupon the plaintiff Mike Dobray proceeded to exhibit to the jury a paper purporting to be an honorable discharge from the Army of the United States, and a picture of a group of men in army uniform, stated by the witness to have been taken in the Philippine Islands, while he, Mike Dobray, was in the army of the United States and stationed in the Philippine Islands.

Thereafter the attorneys for the defendants made and presented a motion to declare a mistrial. The substance of the motion was to discharge the jury and declare a mistrial, because of Dobray's unresponsive answer and the display before the jury, and because same was prejudicial to defendants and that any effort on the part of the defendants, at the time same occurred, to object would have emphasized the display made before the jury; and the injury to defendants could not be withdrawn by an instruction from the court. The court refused the motion, because it did not think the matter so prejudicial as to require that a mistrial be granted, to which action of the court the defendants reserved a bill of exceptions.

We understand plaintiffs' counsel to justify the complained-of answer and display as having been brought on defendants by the character of cross-examination to which they subjected Dobray, and to excuse it on the score of his ignorance. It was developed that Dobray was born an Austrian subject, but had been a naturalized American for many years. When Dobray stated that the explosions had destroyed his home, defendants' counsel asked him if the explosions were the only

thing which had destroyed his home. It was a part of the record of the case that, at the time of the trial, the former Mrs. Dobray was the wife of Tom Mitchell, who was engaged in painting the Dobray house at the time of the explosions. So the question, which plaintiffs claim justified Dobray in making the complained-of answer and display, doubtless was a reference to facts which were before the jury. But the question in no way implied that Dobray had ever played the part of a wittol, and could not have provoked the complained-of answer; and the query was not so related in point of time to Dobray's outburst as to indicate any connection. And as for ignorance of law, that, of course, can be no excuse. The nature of the answer and display showed, as we believe, that it was no unpremeditated outbreak. He had received his honorable discharge from the United States Army many years before, and the picture he also had received long before. He evidently dug these up and carried them with him to the stand for the purpose of doing what he did. At that time the Philippines were very much in everybody's mind, and the brave stand of our soldiers very much in everybody's heart. That he calculated upon this arousing the sympathies in his favor cannot, it seems to us, be doubted. That such an appeal would succeed in the then circumstances seems highly likely. In the case of Gulf, C. & S. F. Ry. Co. v. Levy, 59 Tex. 542, 550, 46 Am.Rep. 269, the court admitted irrelevant evidence by a party to a suit showing his depressed financial condition. The court later withdrew the testimony and told the jury not to consider it. Said the court:

"It is true that the admission of some kinds of testimony, which a jury is afterwards directed not to consider, may not be sufficient cause for reversal; but we are of the opinion that where, in cases like the present, evidence which is calculated to arouse the sympathies of jurors in favor of the party who offers it, and to arouse the feelings of the jury against the opposite party, is erroneously permitted to go before the jury, it is proper ground for reversal. [authority]

"The testimony objected to was that of the appellee himself, and in its nature well calculated to produce upon the minds of the jury an impression and sympathy in his favor, as well as an erroneous view as to the proper elements of damage; and however conscientious a juror may be, and

however hard he may seek to efface the impression made by it, he is still likely unconsciously to permit it to influence his verdict."

Under the above recited facts, we believe that the testimony and display in this case was as prejudicial as the evidence in Gulf, C. & S. F. Ry. Co. v. Levy, Supra, was. This being true, the court should have granted the motion. We must, therefore, reverse and remand the case for a new trial. If upon a new trial the evidence produced against Phillips and Reynolds is the same as in the case, a verdict should be instructed in their favor.

Reversed and remanded.