## CONRICK et al. v. HOUSTON CIVIC OPERA ASS'N, Inc., et al.

### No. 4664.

Court of Civil Appeals of Texas. Amarillo.

Nov. 9, 1936.

Rehearing Denied Dec. 14, 1936.

Rex Poston, of Houston, for appellants.

Andrews, Kelley, Kurth & Campbell, Hirsch, Susman & Westheimer, and Homer Henderson, all of Houston, for appellees.

## MARTIN, Justice.

Appellants sued appellees, a corporation and its several directors, for a debt. Judgment against the corporation was entered as prayed for, but a general demurrer was sustained to the cause of action pleaded against said directors. The action of the trial court in sustaining such demurrer is the only point attempted to be presented on this appeal. Appellants' briefs fail to state any proposition, or assignment of error submitted as such. A rather rambling assignment of error appears in the briefs. A great number of authorities are cited. These, in most cases, do no more than state general principles. We are not at all certain that we understand appellants' specific contentions.

The cause of action pleaded, if any, as shown by the transcript is briefly and in substance: The corporation, Houston Civic Opera Association "has no capital stock and its property, if it had any at the time the alleged contract was executed by it and the alleged indebtedness was created, was held by it by donation, gift and/or subscription." It staged the opera "Aida" in Houston and contracted to pay to appellants $729 for stage scenery to be used in the production of such opera. Appellants' petition then proceeds:

"Plaintiffs would further show that in the production of the said shows and/or opera the defendant corporation, acting through the defendant directors, sold a great number of tickets to the public indiscriminately for a money consideration and that the total and/or aggregate of the aforesaid sale amounted to many thousands of dollars the exact sum being peculiarly within the knowledge of the defendants, and unknown to the plaintiffs. That the said sum of money received by the defendants as aforesaid, the defendant being a non-profit corporation and having no capital stock, constituted a constructive trust fund of which the defendant corporation was trustee * * *. That the debt alleged herein existed at the time the defendants received, collected and possessed the said sum of money and this the defendant corporation and the defendant directors knew and/or by the use of ordinary care and diligence could have known.

"Plaintiffs would further show that the defendant corporation, acting through the defendant directors wholly disregarded the rights of the plaintiffs and converted and/or misappropriated the said trust fund, by promoting and producing and/or staging a show and/or opera similar to the one alleged herein in Chicago, Illinois. That the costs of the said production in Chicago was great, the exact cost of the same plaintiffs cannot allege as such information and knowledge is peculiarly within access and possession of the defendants and unknown to the plaintiffs. * * *

"That the defendant directors knew the defendant corporation was a non-profit corporation and had no capital stock and/or by the use of ordinary diligence they could have known same and their duty as such directors was to see that the said trust fund was used to pay the plaintiff's debts, and to see that the residue was used in furtherance of its chartered purposes, all and/or each of the aforesaid acts constituted negligence and was the proximate cause of the plaintiffs' loss."

Other general allegations appear, but these are referable to the acts of the directors already quoted. If we comprehend the gist of appellants' cause of action

against said directors, it is that the money taken in from the production of the opera "Aida" in Houston constituted a trust fund for the benefit of appellants, and same was negligently expended by the directors, knowing that the corporation had no capital stock, and that its only capital was the said fund acquired "through the said enterprise." The substance of appellees' controlling contentions are: That the corporation being a solvent, going concern, such money was not a trust fund, and that there being no statutory liability of the directors of such a concern, they cannot be made personally liable under the law, in the absence of allegations of some wrongful personal conduct such as fraud, deceit, etc., or contractual obligation.

▉ As a measuring stick of the general liability of directors of a corporation, we here set down a few general principles on this subject:

"As we understand the law in Texas, as construed by our Supreme Court in several cases, two things are necessary to constitute the property and funds of a corporation a trust fund for the benefit of the corporation's creditors. One is that the corporation must be insolvent, and the other is that there must be a cessation of the corporation's business. Both insolvency and ceasing to do business by the corporation must exist before a trust attaches to its funds and properties in the hands of its directors for the benefit of creditors. We think the following authorities clearly support this conclusion: Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., 86 Tex. 143, 24 S.W. 16, 22 L.R.A. 802; Orr & Lindsley Shoe Co. v. Thompson, 89 Tex. 501, 35 S.W. 473. Both these authorities hold that for the assets of a corporation to become a trust fund, in which creditors have a right superior to stockholders, the corporation must not only be insolvent but it must have ceased to do business with no intention to resume business." Temple Lumber Co. v. Pineland Naval Stores Co. (Tex.Civ.App.) 25 S.W. (2d) 675, at page 677.

"The relation of a director to stockholders or to the corporation, we think, is one of trustee, as held by the weight of authorities; * * * but as to creditors or strangers they are agents of the corporation. A director, even under the doctrine that he is an agent, is liable to his principal for breach of duties he has assumed. This is denominated a liability for non-

feasance. So a liability exists for a trespass, fraud, or other wrongs which he may commit against third persons while discharging the duties of such agency. This is usually denominated a liability for misfeasance. In the latter case, when the wrong was done or committed in the course of agency, or where it was directly authorized by the principal, both principal and agent are liable, either jointly or severally. Directors stand towards strangers in the same relation in which any other agent stands toward third persons. * * * The agent is personally liable to third persons for his own misfeasance and positive wrong, but he is not in general liable to third persons for his own nonfeasance or omission of duty in the course of his employment. His liability in those latter cases is solely to his principal; there being no privity between him and such third persons, and the privity exists only between him and his principal." Dollar v. Lockney Supply Co. (Tex.Civ.App.) 164 S.W. 1076, 1079.

"Trustees of a corporate body, with defined powers, are not personally liable, and such has been the recognized rule in this state from the early decisions." Connally v. Lyons & Co., 82 Tex. 664, 18 S.W. 799, 800, 27 Am.St.Rep. 935.

"The creditor deals with the corporation and contracts with it, not with the individual directors. The directors are agents or representatives of the entire body of stockholders, and the relationship between the corporation and the directors is that of principal and agent. The agency of course implies a trust, but the obligations imposed by the trust are solely to the corporation whose agents and trustees they are, and like all other agents they are accountable for their stewardship to their principal alone." Hart v. Hanson, 14 N.D. 570, 105 N.W. 942, 943, 3 L.R.A.(N.S.) 438.

"As was said by the supreme court of the United States in Briggs v. Spaulding, 141 U.S. 132, 11 S.Ct. 924 [35 L.Ed. 662], the relation between the creditors [of a corporation] and the corporation 'is that of contract, and not of trust'; but there is nothing, of either contract or trust, in all ordinary cases, to create any relation between the creditor and the directors. A creditor of a going corporation, being thus a mere stranger, we think it clear that he can no more, after the suspension of the corporation by insolvency, either in law or equity, set in motion litigation to hold its

directors liable for losses attributable merely to inattention, than could the creditor of any other insolvent debtor maintain a suit against his agent under similar circumstances. In such a case as the one we are dealing with,—that is, loss to the corporation resulting from mere negligence on the part of the directors,—a creditor seeking to hold the directors liable for this loss, even in a suit like this, must rest his claim upon some provision of positive law." Deaderick v. Bank of Commerce, 100 Tenn. 457, 45 S.W. 786, 788.

"While it can not be maintained that directors are trustees in the sense in which an agent is trustee for his principal, yet it is said that directors are not liable to creditors for mere nonfeasance, but only for misfeasance. That is the directors are not liable to the creditors on the theory of their being fiduciaries. Directors are not personally liable to creditors for mismanagement, or for waste of assets except upon proof of the commission of actual fraud." 2 Thompson on Corporations, p. 980, (3d Ed.).

 The effect here of appellants' allegations amounts to this: That a contract was made by a benevolent corporation in furtherance of the purpose for which it was created, funds were taken in and thereafter lost the same way. This made the directors liable for negligent mismanagement of its affairs. We are not able to agree to this. Such a proposition would make the directors of every corporation personally liable in cases where its business ventures resulted in financial loss to the extent that its assets were absorbed thereby. There is not in this case any allegation showing bad faith of the directors, fraud, or contractual obligation by them, nor insolvency and ceasing of business of the corporation. Fairly construed, the petition shows only bad judgment on their part. Appellants knew or should have known they were dealing with a corporation without capital stock. They demanded no security or guarantee from the directors, but took their chances. If courts of equity are allowed to interfere with the business discretion of the directors of cor-

porations, we venture their entire time would soon be occupied in discharging the duties of this new found guardianship.

The judgment is affirmed.

### On Motion for Rehearing.

Appellants' motion for rehearing contains a much clearer statement of their contentions than their original briefs. The controlling and essential ones are in brief: That the appellees promised to pay them out of the specific funds created by the production of the opera "Aida" in Houston; that same was a trust fund and was converted by appellees, and that they had a lien on same. It is alleged in paragraph II of their petition that the corporation, through its president, made the contract "in consideration of the said defendant's promise to pay the plaintiffs the sum of seven hundred and twenty-nine dollars in money when the said production was completed." Further, they allege in paragraph VII: "Plaintiffs allege that if they be mistaken herein in paragraph II in that the defendant expressly promised to pay them the alleged sum, then in the alternative they plead that the defendant's acceptance, use and/or appropriation of the alleged things, constituted an acceptance of the plaintiffs' offer as alleged in paragraph II and that $729.00 is a reasonable charge for the' material, things and labor alleged in paragraph III herein." Further, as quoted originally, "That said sum of money * * * constituted a constructive trust fund of which the defendant corporation was trustee."

 We do not think that money received in the ordinary course of business of a solvent, going corporation becomes a trust fund for the benefit of creditors, so as to make its directors personally liable for its future use, nor that a contract of the above character of the corporation creates a lien thereon. Nor do we interpret the present petition as alleging any personal contractual liability of the directors nor any actionable wrong on their part.

The motion is overruled.