**PERMIAN PETROLEUM COMPANY, Appellant,**

v.

**T. J. BARROW, Appellee.**

**No. 6247.**

Court of Civil Appeals of Texas, El Paso.

June 28, 1972.

Rehearing Denied Sept. 20, 1972.

Finley & Scogin, Robert Scogin, Kermit, for appellant.

Dan D. Sullivan, Andrews, for appellee.

## OPINION

WARD, Justice.

This suit was instituted by Permian Petroleum Company against T. J. Barrow, who was the president and active manager of the now defunct corporation, known as H. L. "Jack" Martin, Inc. The suit is an attempt to hold the corporate officer individually liable for a corporation debt on the theory that his alleged tortious conduct in converting property securing the indebtedness and in misapplying funds in the hands of the corporation created a personal liability. Trial was to the Court without a jury and judgment rendered for the defendant. We reverse and remand for a partial new trial.

The controlling facts are without dispute. Prior to May 2, 1969, H. L. "Jack" Martin, Inc. owed the plaintiff the sum of $3,653.20 on an open account. The plaintiff upon hearing that the debtor was financially unstable and would auction off all of its equipment entered into negotiations with T. J. Barrow in an attempt to secure a lien preference over other unsecured creditors. It secured from the corporation, duly signed and attested by its president and secretary, an instrument, dated May 2, 1969, and designated as "Assignment of Proceeds," the pertinent terms of which are as follows:

"That H. L. "Jack" Martin, Inc., a Texas corporation, with its principal place of business in Andrews, Texas, acting by and through its officers duly authorized to act hereunder, for and in consideration of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby bargain, sell, transfer and assign unto Permian Petroleum Co., a corporation, its successors and assigns, a sum of money equal to Three Thousand Six Hundred Fifty-three and 20/100 Dollars ($3,653.20) from the sale of any and/or

all equipment and property of the assignor, H. L. "Jack" Martin, Inc.

This Assignment does hereby direct C and S Auctioneers, Inc., to pay to Permian Petroleum Co. the sum of $3,653.20 from proceeds of the sale of the equipment of H. L. "Jack" Martin, Inc., for an auction to be held on May 6, 1969, in Odessa, Texas, or any other auction that may be held by C and S Auctioneers, Inc. It is understood and agreed that said sum of $3,653.20 shall be paid after satisfying the first liens against said equipment in favor of the First National Bank of Andrews, Texas, and the Judgment Lien of Mansell Brine Sales, in the amount of $2,781.31, and after C and S Auctioneers, Inc. have deducted from the proceeds the commission contracted to be paid to C and S Auctioneers Inc., and thereafter from said proceeds the sum of $3,653.20 or so much of the proceeds that are available up to that amount shall be paid to Permian Petroleum Co., its successors and assigns.

This Assignment does hereby direct and authorize the said C and S Auctioneers, Inc., to make this payment of said monies to Permian Petroleum Co., effective the date of execution hereof and to that extent the said Permian Petroleum Co. has a third lien and interest in the equipment to be sold as of date hereof."

At the same time that this Assignment of Proceeds was executed and at the insistence of Mr. Barrow, as a condition to the execution of the Assignment, a letter was secured from Permian Petroleum Co., addressed to Mr. T. J. Barrow, and to the following effect:

"With reference to the assignment of proceeds executed by your company, this date, this is to advise as follows:

1. That Permian Petroleum will have no objection to the auction to be held May 6, 1969; and,

2. That the sale price for any item of equipment may be determined by the auctioneer and/or you; and,

3. That Permian Petroleum will release the lien on any equipment sold upon request by you for the release of the lien, whether the equipment is sold at the auction, with the understanding that the proceeds from any sale will be first applied to the first lien held by First National Bank of Andrews, and the balance, if any, will then be applied to payment of the indebtedness of your company; and,

4. In the event of any litigation, Permian Petroleum will agree to applying the proceeds of the liquidation, over and above the first lien, to the creditors of your company on a pro-rata basis in the event it. should become necessary to do so."

On May 6, 1969, a public auction was had on all of the equipment of the defendant corporation, as a result of which the professional auctioneers were able to pay to the plaintiff the sum of $2,268.17, which left a balance due and owing in the amount of $1,385.03, the auctioneers having paid only the prior claims in full of the First National Bank of Andrews, Mansell Brine Sales and their own contracted commission. During the course of the auction, Mr. Barrow became dissatisfied with the apparent sale price of one truck and, on behalf of H. L. "Jack" Martin, Inc., bought this truck by bidding the sum of $1,200.00 for it. According to Mr. Barrow, this was his method of determining the price on this particular equipment, and was done by him in accordance with the terms of paragraph 2 of the letter agreement. Though no cash was paid for this piece of equipment, the auctioneers by the terms of their agreement were paid their commission on this particular sale. Thereafter, Mr. Barrow, acting on behalf of the corporation, sold the truck at private sale and the proceeds of that sale were paid by

him on other debts of the corporation rather than on those heretofore mentioned.

The trial Court made findings of fact confirming the above and in addition finding that there was no evidence proving or tending to prove that T. J. Barrow used the corporate entity of H. L. "Jack" Martin, Inc. as a sham to perpetrate a fraud to avoid personal liability, to avoid the effect of any statute or in any way use the corporate entity to escape personal liability and that there were neither pleadings nor sufficient evidence of probative value to support any theory that H. L. "Jack" Martin, Inc. was the alter ego of T. J. Barrow. The conclusion was then to the effect that the plaintiff's pleadings and proof failed to establish a cause of action. The defendant argues that by the basic rule of the law of corporations he is insulated from personal liability and that there has been presented no facts to bring about a "piercing of the corporate veil." See the discussion in Sutton v. Reagan & Gee et al., 405 S.W.2d 828, at p. 836 (Tex.Civ.App.—San Antonio 1966, writ ref'd n. r. e.). With this we agree, but that is not the appellant's position.

■ The appellant's case is to the effect that Mr. Barrow has himself committed a tort while acting as agent for the corporation and the substantive law of agency imposes liability for his act on this officer. It is not necessary that the corporate "veil" be pierced or even discussed. An officer or any other agent of a corporation may be personally as responsible as the corporation itself for tortious acts when participating in the wrongdoing. An officer or agent of a corporation is always primarily liable for his own torts, even though the principal is also liable, but he cannot be held liable for a wrong in which he has not participated. Mayflower Investment Company et al. v. Stephens, 345 S.W.2d 786 (Tex.Civ.App.—Dallas 1960, writ ref'd n. r. e.).

"A corporate officer who converts the property of another to the use of the corporation, or who misapplies private funds in the hands of the corporation is personally liable to the person whose property or funds have been so misappropriated. * * * However, there is no such liability for the wrongful act of a co-officer where the person sought to be charged did not participate in the wrongful act and had no knowledge, actual or constructive, thereof. * * * This limitation of liability is but an application of the doctrine that liability of corporate officers and directors does not grow out of the fact that they occupy such positions, but springs out of their participation in the wrong. Belo v. Fuller, 84 Tex. 450, 19 S.W. 616 (1892)."

Sutton v. Reagan & Gee et al., supra, 405 S.W.2d at p. 833; Maxey et al. v. Rodman et al., 444 S.W.2d 353 (Tex.Civ.App.—El Paso 1969, writ ref'd n. r. e.); See Annotation, 152 A.L.R. 696; 49 Texas L.Rev. 979, at p. 982. Where the evidence shows liability upon the part of a company for conversion, then those of the company's directors and officers who participated therein by instigating, aiding, or abetting the company in so doing are liable with the company as joint tort-feasors. Bower v. Yellow Cab Co., et al., 13 S.W.2d 708 (Tex.Civ.App.—El Paso 1929, writ ref'd).

■ The contracts having created a lien on either the equipment or the funds derived from any sale of the equipment, the appellant contends it may maintain its suit for conversion or misapplication of funds.

"In general, a lienholder may sue for a conversion of the encumbered property and recover its value to the extent of his lien. But a lienholder who has consented to a sale of the property by the owner may not bring an action for conversion his claim being limited to the proceeds of the sale."

14 Tex.Jur.2d 53. It being clear that the lienholder consented to the sale but did retain a lien upon the proceeds to be derived, the lien should be recognized, and the de-

fendant who actively participated in the misapplication becomes personally liable. Emmert et al. v. Drake, 224 F.2d 299 (Fifth Cir. 1955).

All of which brings us to the decisive point in the case which is to determine if the appellant had a lien on the last truck that was sold or on the proceeds received from the sale. The trial Court correctly found that the assignment and letter agreement were both part of the same contract and were to be taken and construed together as one contract, Veal et al. v. Thomason, 138 Tex. 341, 159 S.W.2d 472 (1942). The trial Court originally concluded that no lien had ever been granted to the appellant by virtue of the contract because of the language contained in paragraph 3 of the letter. However, on appeal, the appellee concedes that a lien was granted insofar as it concerned the equipment which was sold at the auction. However, it is the appellee's further contention on this appeal that no lien was ever given to the appellant on items which were withdrawn from sale at the auction. Considering the fact that the appellee requested that the letter be prepared for his benefit before he would execute the assignment of the proceeds, and considering the fact that admittedly a lien was granted for items sold at the auction, we are unable to find any exemption or exception from the lien granted to the appellant. We, therefore, hold that it became the duty of the appellee to see that the money realized from the sale of the last truck was used to pay the appellant. He is personally liable to the appellant for his misapplication.

There has been no determination of the amount realized from this last private sale and we remand the case to the trial Court for ascertainment of this amount as the damages that are to be awarded to the appellant.

The judgment of the trial Court is therefore reversed and the cause is remanded to the trial Court with directions that judg-

ment be entered for Permian Petroleum Company against T. J. Barrow for the correct amount due in accordance with this opinion.

RAMSEY, C. J., not sitting.