**Raymond PORTLOCK and Mary Portlock, Individually and as Heirs to the Estate of Erica Portlock, Deceased, Appellants,**

v.

**Kenneth W. PERRY, Appellee.**

No. 05–91–01695–CV.

Court of Appeals of Texas,
Dallas.

Feb. 19, 1993.

Rehearing Denied March 24, 1993.

Concurring Opinions by Justices Barker and Lagarde on Denial of Rehearing March 24, 1993.

William A. Newman, Michael S. Box, Dallas, for appellants.

W. Blake Hyde, Keith A. Glover, Dallas, for appellee.

## OPINION

KINKEADE, Justice.

Raymond Portlock and Mary Portlock, individually and as heirs to the estate of Erica Portlock, deceased, (the Portlocks) appeal the summary judgment rendered in favor of Kenneth W. Perry in this negligence and medical malpractice cause of action. In two points of error, the Portlocks argue that the trial court erred in granting Perry summary judgment and in denying their motion for rehearing. Because the trial court properly granted Perry summary judgment and properly denied the Portlocks' motion for rehearing, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL HISTORY

On October 19, 1989, the Portlocks took their four-and-a-half-year-old daughter Erica to the Duncanville Diagnostic Center (the Center) for routine radiological examinations. During the first exam, Erica became anxious, and Dr. Victor McCall ordered the radiological technologists, Cheryl Heckard and Linda Cole, to sedate her with chloral hydrate. Dr. McCall delegated the responsibility of calculating the dosage to the technologists. The technologists miscalculated the dosage, giving Erica too much. The actual dosage calculated and

given was not recorded. When the Portlocks took Erica home, she was still sleeping. Mr. Portlock called the Center later that day because he was concerned that Erica still had not awakened. The receptionist put Mr. Portlock on hold while she spoke with one of the radiological technologists. The receptionist then told Mr. Portlock not to worry because Erica might sleep well into the evening or next morning and to check Erica's breathing to make sure she was all right. When Erica did not awaken later that evening, the Portlocks took her to the emergency room of Charlton Methodist Hospital in Dallas. The medical examiner pronounced Erica dead and attributed Erica's death to "acute chloral hydrate intoxication."

In 1984, Kenneth Perry, an oil and gas engineer by training, invested in a radiology diagnostic center with Dr. J.W. Fischer, a radiologist who started the Center with Perry. Perry stated that he was strictly an investor in the Center and that Dr. Fischer operated and ran the Center's day-to-day activities. Initially, the Center was called J.W. Fischer, Inc. In 1987, after Dr. Fischer filed personal bankruptcy and the corporation acquired all of his shares, the name was changed to the Duncanville Diagnostic Center pursuant to Dr. Fischer's request. At that time, Perry became president of the corporation.

At first, Dr. Fischer directed the Center's daily activities and was responsible for hiring its employees. Perry received monthly financial reports but did not receive reports on the Center's daily activities. When personnel problems developed as a result of Dr. Fischer's management after the change of ownership, Perry hired Don McCoy in 1987 as a consultant and gave him the responsibility for the Center's daily operations. McCoy previously worked on the business and financial side for hospitals and other medical care groups. He had no experience in providing patient-care services. McCoy hired Jim Thomas as a full-time on-site manager. While McCoy was responsible for hiring Thomas, Perry approved the creation of Thomas's position and the hiring of Thomas. Thomas's previous experience, like McCoy's, was primarily on the financial side of the health-care industry for hospitals and medical care groups. He also had no experience in patient-care services. McCoy and Thomas were not hired to provide patient-care services. McCoy and Thomas were responsible for the business operations of the Center.

At the time of Erica's death, McCoy spent about three hours a week at the Center and acted as a consultant to the Center. He was unaware of what the Center's procedures and policies were concerning patient care. Thomas managed the Center's daily activities, including the hiring and firing of employees, and reported to McCoy. In 1987, after Dr. Fischer's involvement in the Center ended, Dr. McCall was hired as the Center's radiologist and reported to Thomas. Perry was not present during the administering of the drug to Erica and had no role in or any knowledge of the administering of the drug.

On April 12, 1991, the Portlocks sued the Center, Dr. McCall, and the radiological technologists who administered the sedative, seeking damages for Erica's death on the theories of negligence and medical malpractice. On June 5, 1991, the Portlocks amended their petition to include Perry. The Portlocks settled their claims against Dr. McCall and nonsuited the Center and the technologists. The Portlocks alleged that Perry was negligent because he:

(1) failed to mandate that adequate policies and procedures be in writing and in place for documenting narcotics that were being utilized at the Center;

(2) failed to ensure that adequate policies and procedures were in place at the Center requiring that the physician on duty supervise the administration of potentially fatal narcotics and other drugs to children;

(3) failed to ensure that adequate quality assurance and quality control procedures were in place at the Center;

(4) failed to ensure that policies and procedures were in place for the hiring,

training, and supervision of the Center's radiological technologists;

(5) negligently hired the consultant manager/administrators of the Center without properly checking into their medical background and qualifications for running, managing, and operating a radiology clinic;

(6) failed to ensure that the person and/or persons whom he hired to operate the Center had a sufficient understanding of safety concerns for the patients and was competent to formulate policies and procedures for patient safety and quality assurance;

(7) failed to inquire as to what safety policies and/or procedures, if any, would be put in place at the Center by anyone he hired to run the facility;

(8) failed to ensure and mandate that proper policies and procedures were in place and enforced, regarding the receptionist and her handling and routing of phone calls; and

(9) failed to have someone at the Center to properly train and supervise the receptionist at the clinic.

Additionally, the Portlocks alleged that Perry was negligent for all of the reasons set out in James M. Rauer's affidavit. Dr. Rauer, a board certified radiologist, owned and managed a facility that provided services similar to those that the Center provided. In his affidavit, Dr. Rauer set forth the standard of care for the president of a corporation operating a diagnostic radiology center. Dr. Rauer then opined that Perry fell below that standard because he:

(1) failed to inform himself of the fact that medications were going to be administered to patients coming into the Center;

(2) failed to make any attempt to find out what safety policies and procedures, if any, were going to be put into place at the Center to protect patients from having improper amounts of medication administered to them; and

(3) failed to ascertain the background of personnel such as McCoy and those hired by McCoy to operate and manage the Center.

The Portlocks further alleged that the above negligent acts and/or omissions constituted gross negligence and that, as a result of these acts, medical expenses were incurred and Erica lost her life.

Perry moved for summary judgment arguing that as president of the corporation he could not be held individually liable for Erica's death. After a hearing, the trial court granted Perry's motion and overruled the Portlocks' motion to reconsider. In two points of error, the Portlocks contend that the trial court erred in granting Perry summary judgment and in denying their motion for rehearing because Perry is not protected by the corporate shield.

## SUMMARY JUDGMENT

■ Summary judgment may be rendered only if the pleadings, depositions, admissions, and affidavits show (1) that there is no genuine issue as to any material fact, and (2) that the moving party is entitled to judgment as a matter of law. TEX. R.CIV.P. 166a(c); *Rodriguez v. Naylor Indus., Inc.*, 763 S.W.2d 411, 413 (Tex.1989). A summary judgment seeks to eliminate patently unmeritorious claims and untenable defenses, not to deny a party its right to a full hearing on the merits of any real issue of fact. *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952).

■ In a summary judgment proceeding, the defendant, as movant, must either (1) disprove at least one element of each of the plaintiff's theories of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex. 1979). A summary judgment for the defendant disposing of the entire case is proper only if, as a matter of law, viewing the evidence in the light most favorable to the plaintiff, the plaintiff could not succeed upon any theory pleaded. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983).

### Corporate Officer Liability

Perry contends that the corporate shield protects him from individual liability for the death of Erica because he did not directly participate in any act which caused her death. The Portlocks allege that Perry was a direct participant because (1) he was negligent in failing to institute certain policies and procedures and quality control for the Center, and (2) he negligently hired McCoy and Thomas on behalf of the Center. The Portlocks argue that such negligence proximately caused Erica's death.

The general rule of corporate law is that officers of a corporation are insulated from personal liability arising from their activities performed in the scope of their duties for the corporation. *Delaney v. Fidelity Lease Ltd.*, 526 S.W.2d 543 (Tex. 1975). However, a corporate officer may be held individually liable for a corporation's tortious conduct if he knowingly participates in the conduct or has knowledge of the tortious conduct, either actual or constructive. *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex.1984); *K & G Tool & Serv. Co. v. G & G Fishing Tool Serv.*, 314 S.W.2d 782, 793 (Tex.1958); *Permian Petroleum Co. v. Barrow*, 484 S.W.2d 631, 634 (Tex.Civ.App.—El Paso 1972, no writ). Instigating, aiding, or abetting the wrongdoing constitutes participation. *Permian Petroleum Co.*, 484 S.W.2d at 634.

The ultimate injury in this case is the death of Erica resulting from the improper administration of the chloral hydrate. The undisputed summary judgment evidence shows that Perry did not administer the drug to Erica, was not present when the drug was administered to Erica, had no knowledge of the administering of the drug to Erica, and did not otherwise instigate, aid, or abet such conduct. Instead, the Portlocks argue that Perry's omission in instituting policies, procedures, and quality control and his affirmative acts of negligently hiring Thomas and McCoy constitute direct participation in Erica's death because such actions proximately caused Erica's death.

### Direct Participation

Generally, direct participation is shown by affirmative acts, not acts of omission, because an affirmative act gives rise to a duty. But this is not always the rule. *See Seismic Explorations v. Dobray*, 169 S.W.2d 739, 743 (Tex.Civ.App.—Galveston 1943, writ ref'd w.o.m.); *Conrick v. Houston Civic Opera Ass'n*, 99 S.W.2d 382, 384 (Tex.Civ.App.—Amarillo 1936, no writ). In *S.H. Kress & Co. v. Selph*, 250 S.W.2d 883 (Tex.Civ.App.—Beaumont 1952, writ ref'd n.r.e.), the court held that there is no distinction between misfeasance and nonfeasance if nonfeasance means simply omission to do something there is an affirmative duty to do. *Id.* at 892. There is still a distinction when the omission is of an act which there is no duty to perform. *Id.* The existence of a legal duty is a question of law for the court. *Barham v. Turner Constr. Co. of Tex.*, 803 S.W.2d 731, 735 (Tex.App.—Dallas 1990, writ denied).

### Policies and Procedures

In this case, we hold, as a matter of law, Perry had no duty to institute policies, procedures, and quality control. Perry had no duty because nothing in the record shows that he undertook an affirmative act to institute policies and procedures and quality control or was otherwise required to do so as an officer of the corporation. In *Rauer's* affidavit filed by the Portlocks, Rauer did not state that Perry had a duty to institute policies, procedures, and quality control. Rauer merely stated that Perry should have informed himself of the corporation's policies and procedures, *if any.* Further, Perry had no duty because McCoy, Thomas, and Dr. McCall, the physician who treated Erica, were in charge of the Center's day-to-day operations, not Perry. Therefore, Perry's alleged omission to institute policies and procedures does not constitute direct participation because Perry had no affirmative duty to act.

### Negligent Hiring

Perry, however, may have assumed a duty to hire competent consultants and

administrators when he performed the affirmative acts of hiring McCoy and Thomas. Even assuming such a duty, in order to raise a fact issue on Perry's individual liability, there must be some evidence that Perry's negligent hiring of Thomas and McCoy constitutes direct participation by Perry in Erica's death. In other words, there must be some evidence that the hiring of Thomas and McCoy proximately caused the death of Erica Portlock. *See Dieter v. Baker Serv. Tools*, 739 S.W.2d 405, 408 (Tex.App.—Corpus Christi 1987, writ denied); *see also Permian Petroleum*, 484 S.W.2d at 634; *Sutton v. Gee*, 405 S.W.2d 828, 833 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.). There is no causal connection between Perry's negligent hiring, if any, of McCoy and Thomas and Erica Portlock's death because the Portlocks neither pled nor offered summary judgment proof that Dr. McCall or the technologists who administered the drug were negligently hired. The Portlocks, however, argue in their response to Perry's motion for summary judgment that proximate cause links Perry, individually, to the death of Erica Portlock and that the evidence shows that such proximate cause exists.

### Proximate Cause

Proximate cause is that cause, unbroken by any new and independent cause, which produces injury and without which the injury would not have occurred. Proximate cause includes two essential elements: (1) cause in fact, and (2) foreseeability. Both elements must be present and may be proven by direct or circumstantial evidence. Proximate cause cannot be established by mere guess or conjecture, but rather must be proved by evidence of probative force. *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 223 (Tex.1988); *McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901, 903 (Tex.1980); *Cook Consultants, Inc. v. Larson*, 700 S.W.2d 231, 236 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Cause in fact means that the negligent act at issue was a substantial factor in producing the injury and without such negligence no harm would have resulted.

*Brown*, 764 S.W.2d at 223. Foreseeability is satisfied by showing that the actor, as a person of ordinary intelligence, should have anticipated the danger to others by his negligent act. *McClure*, 608 S.W.2d at 903.

### Cause in Fact

The Portlocks' argument is that, but for Perry's negligent hiring of McCoy and Thomas, the technologists and doctors would not have improperly administered the drug to Erica. McCoy and Thomas did not improperly administer the drug. The negligent hiring, if any, was broken by an independent cause, the negligent administering of the drug by the technologists and McCall. There is no summary judgment proof that links the alleged negligent hiring of McCoy and Thomas to the improper administration of the drug. The alleged negligent hiring of McCoy and Thomas was not a substantial factor in producing Erica's death. The death occurred irrespective of the hiring of McCoy and Thomas. The negligent administering of the drug to Erica by the technologists and McCall was the cause in fact of her death.

### Foreseeability

Perry's alleged negligent hiring of McCoy and Thomas, as consultant and administrator, had nothing to do with the improper actions of the technologists and the doctor. Perry hired the people who hired and supervised the technologists and doctors. There is no summary judgment proof that the technologists and doctors were negligently hired. Perry's actions are too far removed to be a foreseeable cause of the death. Perry could not have anticipated the danger to the Portlocks by hiring McCoy and Thomas because McCoy and Thomas were not hired to provide medical services to patients and there was no evidence that those who did provide medical services were negligently hired.

The summary judgment evidence viewed in the light most favorable to the Portlocks shows that Perry's alleged negligent hiring of McCoy and Thomas did not constitute direct participation in the death of Erica

because it was not the proximate cause of Erica's death.

## CONCLUSION

Because Perry cannot be held individually liable for Erica's death, there are no genuine issues of material fact, and the trial court did not err in granting summary judgment or in denying the Portlocks' motion for rehearing. We overrule both of the Portlocks' points of error. This opinion only addresses the issue of Perry's individual liability. We do not express any opinion with respect to the liability of the corporation or other corporate employees who may have directly participated in Erica Portlock's tragic death.

We affirm the trial court's judgment.

BAKER, LAGARDE, THOMAS, OVARD, BARBER and MORRIS, JJ., join in the majority opinion.

BURNETT, CHAPMAN and ROSENBERG, JJ., join in the dissenting opinion.

WHITTINGTON, J., not participating.

MALONEY, Justice, dissenting.

I dissent.

Although neither appellants nor appellee argue causation on appeal, the majority resolves this case on proximate cause. The majority acknowledges that when Perry hired McCoy and participated in the hiring of Thomas, he may have assumed a duty to hire competent consultants and administrators. However, then the majority concludes as a matter of law that negligent hiring was not a proximate cause of the Portlocks' injuries.

## ISSUE ON APPEAL

Perry moved for summary judgment *solely* on the contention that, as a corporate officer or director, he could not be held personally liable. He maintained he violated no legal duty nor did he owe any legal duty to the Portlocks. He argued below and argues on appeal that his only connection to the Duncanville Diagnostic Center was that he was its president.

The Portlocks did not contend that Perry was responsible for their injuries because he was the clinic's president. They argued that his direct actions in negligent hiring of personnel and failure to implement and monitor patient safety procedure and personnel training caused their injury. Only the Portlocks' summary judgment response mentions proximate cause.

The briefs before this Court explore whether Perry is shielded from liability because he is a corporate officer. Neither brief ever argues that Perry's actions were or were not the proximate cause of the Portlock's injuries. Certainly, neither side brings us any authorities or cites us to any evidence to address the issue of proximate cause.

An appellate court should confine itself to resolution of issues that the parties present and fully argue. *See State v. Valmont Plantations*, 346 S.W.2d 853, 878–79 (Tex. Civ.App.—San Antonio 1961), *aff'd*, 163 Tex. 381, 355 S.W.2d 502 (1962). This Court has previously adhered to this position:

> Our judicial system rests upon the foundation of adversary presentation which affords the theoretical guarantee that diligent antagonists, by developing all aspects of the dispute, will prevent a court from being misled by inadequate understanding of the facts and law and adopting a position unjust to the parties and possibly damaging to the community.

*C & C Partners v. Sun Exploration & Prod. Co.*, 783 S.W.2d 707, 723 (Tex.App.—Dallas 1989, writ denied).

## PROXIMATE CAUSE

The majority summarily concludes as a matter of law that an independent cause—the negligent administering of a drug—broke the causal connection between any negligent hiring and Erica Portlock's death. In reaching this conclusion, it cites no pertinent authority. The majority appears to hold that this negligent administration of the drug was the sole cause in fact of the injury and Perry could not have foreseen its occurrence. The majority states that

"Perry merely hired the people who hired and supervised the technicians and doctors." The majority concludes *as a matter of law* that the negligent hiring had *nothing* to do with the improper drug administration. Because the majority opinion reaches beyond the appellate briefs and argument to raise its own issue, lack of proximate cause, I am obligated to address proximate cause.

## 1. Applicable Law

Whether a defendant's negligence was a proximate cause of a plaintiff's injuries is a question of fact. *Clark v. Waggoner*, 452 S.W.2d 437, 440 (Tex.1970). Proximate cause encompasses the elements of cause in fact and foreseeability. *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 223 (Tex.1988); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549 (Tex. 1985).

### a. Cause in Fact

Cause in fact takes into consideration omissions and affirmative acts. *East Texas Theatres, Inc. v. Rutledge*, 453 S.W.2d 466, 469 (Tex.1970). Cause in fact requires that the negligent act or omission be a substantial factor in causing the injury. In other words, without such negligence no harm would have resulted. *Brown*, 764 S.W.2d at 223; *Nixon*, 690 S.W.2d at 549.

### b. Foreseeability

A person of ordinary intelligence should anticipate the dangers that his negligence creates for others. *Brown*, 764 S.W.2d at 223; *Nixon*, 690 S.W.2d at 549–50. Texas law does not require that an actor foresee the particular accident or injury that occurs, nor does it require that the actor anticipate exactly how the injury will develop from a particular dangerous situation. Foreseeability only requires that the injury be of such a general character as an actor might reasonably have anticipated, and that the injured party be so situated in relation to the negligence that an actor might reasonably have foreseen the injury. *Brown*, 764 S.W.2d at 223–24.

There may be more than one proximate cause of an event. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). Proximate cause need not be the immediate or nearest cause. *Atchison v. Texas & Pac. Ry.*, 143 Tex. 466, 473, 186 S.W.2d 228, 231 (1945); *Galveston–Houston Breweries, Inc. v. Naylor*, 249 S.W.2d 262, 268 (Tex.Civ.App.—Galveston 1952, writ ref'd n.r.e.) (op. on reh'g). Even when some new cause or agency combines with the original negligence to produce an injury, the original negligence remains a proximate cause of the injury. The concurring cause or agency does not relieve the original wrongdoer of liability. *Atchison*, 143 Tex. at 473, 186 S.W.2d at 231; *see Northwest Mall, Inc. v. Lubri-lon Int'l, Inc.*, 681 S.W.2d 797, 803–04 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

If a separate and *independent* agent's acts or omissions destroy the causal connection between the defendant's original negligence and the injury, we consider those acts or omissions to be a new and independent cause. *Young v. Massey*, 128 Tex. 638, 641, 101 S.W.2d 809, 810 (1937); *Galvan v. Fedder*, 678 S.W.2d 596, 598 (Tex.App.—Houston [14th Dist.] 1984, no writ). However, a new and independent cause must be one which the original wrongdoer, in the exercise of ordinary care, could not have foreseen. *Texas Indus., Inc. v. Lucas*, 634 S.W.2d 748, 755 (Tex.App.—Houston [14th Dist.] 1982), *rev'd on other grounds*, 696 S.W.2d 372 (Tex.1984); *see City of Austin v. Schmedes*, 154 Tex. 416, 424, 279 S.W.2d 326, 331 (1955); *Bell Helicopter Co. v. Bradshaw*, 594 S.W.2d 519, 533 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.).

## 2. Application of Law

The majority concludes, without explanation, that a fact finder could not possibly find for the Portlocks on proximate cause. I am not as confident as the majority that Perry's acts and omissions had nothing to do with the Portlocks' injuries.

The record has ample summary judgment evidence showing that Perry hired McCoy because he had a background in

medical *business* management. Perry's financing bank recommended hiring McCoy to bring the clinics [1] to a better financial level. McCoy had no training in quality control, patient safety, or quality assurance of medical procedures. His determination of hospital staffing levels were for business office purposes and from a cash flow analysis only. McCoy had never operated a free-standing radiology center before he went to Duncanville Diagnostic Center.

Perry approved of McCoy's hiring Thomas even though Perry knew nothing about Thomas's background. Perry interviewed Thomas before he was hired. Although Thomas ran the diagnostic radiology clinic on a day-to-day basis, Perry never inquired if he had any health care expertise. Neither Perry, McCoy, nor Thomas ever inquired if any patient safety procedures existed.

Perry had the ultimate authority to change personnel and make decisions. McCoy had to have Perry's approval in all matters. Because Perry retained ultimate control, I cannot characterize the person or persons who administered the drug as independent from Perry and those whom Perry hired.

When I review this evidence and resolve any doubts in favor of the Portlocks, I do not agree that a jury could not find that:

(1) Perry's negligent hiring of McCoy and Thomas was a substantial factor in bringing about the injury;

(2) the injury would not have occurred absent such negligence; and

(3) Perry should have foreseen that this type of injury could have occurred.

A properly instructed jury could have found that Perry should have foreseen the injury, and that the negligent administration of the drug was a *concurring* cause, not an independent cause.

## CONCLUSION

The majority decides issues as a matter of law that are precisely the issues that should be resolved by a trier of fact. Neither appellant or appellee requested that this Court decide whether proximate cause existed. That the majority seeks out its own issue suggests unwarranted judicial activism.

The Portlocks may or may not satisfy a jury that Perry's alleged negligent hiring was a proximate cause of their injuries. Nevertheless, they are entitled to an opportunity to try to do so and to have this Court review the issue of proximate cause only after a full adversarial and evidentiary hearing on proximate cause.

Based on the briefs and the record, I would reverse the summary judgment and remand this cause for further proceedings.

## ON MOTION FOR REHEARING
Rehearing denied March 24, 1993.

BARBER, Justice, concurring.

I agree with the majority's decision that the Portlocks' motion for rehearing should be denied. I also agree with the result reached in the majority's opinion. However, I would reach that result based upon the reasoning in the Opinion on Motion for Rehearing by Justice Lagarde.

LAGARDE, Justice, concurring.

I would grant rehearing en banc. Although I would reach the same result reached by the majority, I would do so for different reasons.

The competent summary judgment evidence shows that all of Kenneth W. Perry's acts and omissions were done by him as an agent of the corporation in his official capacity as president of the corporation, Duncanville Diagnostic Center, Inc. As such, his acts and omissions were corporate acts and omissions resulting from furtherance of corporate goals, policies, and business interests, as distinguished from Perry's "own" torts. *Cf. Torregrossa v. Szelc*, 603 S.W.2d 803, 804 (Tex.1980). Consequently, I conclude as a matter of law that based on the facts before us, the corporate veil shields the corporate officer, Perry, from

1. Perry owned several clinics as investments. McCoy divided his time between all of the clin-

ics. For purposes of this opinion, the other clinics are immaterial.

individual liability. I would affirm on that basis.