NUMBER 13-98-509-CV 



COURT OF APPEALS 



THIRTEENTH DISTRICT OF TEXAS 



CORPUS CHRISTI 

___________________________________________________________________ 



C. A. RASMUSSEN, INC., D/B/A 

RASMUSSEN RAIL GROUP, Appellant, 



v. 



JOSEPH P. LINCK, INDIVIDUALLY AND D/B/A 

GLOBAL STONE, L.C. AND CONSTRUCTION LINCK, Appellees. 

___________________________________________________________________ 



On appeal from the 357th District Court 

of Cameron County, Texas. 

___________________________________________________________________ 



O P I N I O N 



Before Chief Justice Seerden and Justices Dorsey and Chavez


Opinion by Chief Justice Seerden 







This is a tortious interference with contract and negligence case. C.A. Rasmussen, Inc.
("Rasmussen"), appellant, appeals the judgment for Global Stone, L.C.
("Global"), appellee, awarding it compensatory and exemplary damages. 

In 1995, the Port of Brownsville announced Phase II of its plan to construct a railroad
line to the Port. Phase II called for nearly 45,000 tons of stone ballast to be placed
underneath the rails and cross ties as a supporting bed. Global sold rock products which
it received at its dock in the Port of Brownsville. Before the contract on Phase II was
awarded, Global contacted all bidders, offering to supply the needed stone ballast. At the
same time, it contacted Martin Marietta, a supplier of such ballast. Joseph Linck, owner
of Global, sought to make his company Martin Marietta's exclusive sales agent for Phase
II. The extent of the relationship between Global and Martin Marietta forms the basis for
the present dispute. 

The record indicates that Global offered to purchase ballast from Martin Marietta with
hope to re-sell it to the project's contractor. The agreement between Martin Marietta and
Global contemplated payment for the stone itself and delivery of same to Global's dock.
Global also intended to profit by providing other services to the project's contractor.
Those services were independent of the agreement between Global and Martin Marietta. 

Rasmussen was awarded the contract on October 25, 1995. Between that date and February
2, 1996, Rasmussen and Global were involved in negotiations which proved fruitless. The
record reflects that Rasmussen and Global could not agree on certain contractual terms
related to "load out" of the ballast and storage. Needing the ballast to avoid
costly delays, Rasmussen contacted Martin Marietta's representative, Dick Gage, and placed
an order to purchase the ballast directly. Linck became aware of Rasmussen's efforts and
faxed a letter to Gage confirming the validity of their exclusive agency agreement. There
is evidence showing that Rasmussen was aware of the exclusive agency agreement when it
purchased the ballast. However, the record also reflects that after selling the ballast to
Rasmussen, Martin Marietta paid Global $2.70 per ton for receiving and handling the
ballast. This price roughly corresponds to the difference between Martin Marietta's last
quoted price to Linck ($12.50 per ton) and the price at which Linck would have sold the
ballast to Rasmussen ($14.95 per ton). Martin Marietta acknowledged that it offered the
money to make up Global's lost profit from the unrealized sale. 

The ballast was delivered to Global's dock on March 6, 1996. The present litigation
began at that point. Global refused to permit Rasmussen to enter onto its property to
remove the ballast. Rasmussen subsequently filed suit and obtained a temporary restraining
order to enter Global's property and remove the ballast. Rasmussen also sought damages for
delays caused by Global's refusal to allow earlier access to the stone. However, during
the loadout, Rasmussen removed some limestone from the Global dock and caused physical
damage to Global's facility. Global then counterclaimed, alleging tortious interference
with the Martin Marietta agency agreement and negligence. Global sought damages for lost
profit on the resale of the ballast and also sought to recover for lost anticipated
profits associated with its storage and loadout of the ballast for Rasmussen. Furthermore,
Global sought to recover for the removed limestone and for physical damage to its
facility. 

The jury found that Rasmussen intentionally and wrongfully interfered with Global's
exclusive sales contract with Martin Marietta and that the interference was not justified.
The jury furthermore found that Rasmussen's negligence proximately caused damage to
Global's facility. Based on these findings, the jury awarded Global $78,000 for past lost
profits and lost sales of limestone, $10,000 future lost profits and lost sales of
limestone, and $12,000 for physical damage done to Global's facility. Neither side
contests either Rasmussen's liability for its negligence in damaging Global's dock or the
extent of the damages awarded for that misfeasance. 

By its first and second issues, Rasmussen contends that there was legally or factually
insufficient evidence to support the jury's findings that it interfered with either an
existing or prospective contract between Global and Martin Marietta. By its third issue,
Rasmussen argues there was legally or factually insufficient evidence to support a finding
of proximate cause related to the interference claim. 

In conducting a legal sufficiency review, we may only consider the evidence and
inferences tending to support the findings. This evidence must be viewed in a light most
favorable to the findings and we must disregard any evidence or inferences to the
contrary. Sherman v. First Nat'l Bank, 760 S.W.2d 240, 242 (Tex. 1988). So long
as there is more than a scintilla of evidence supporting the finding, the challenge must
be overruled. Id. By contrast, in a factual sufficiency review, we examine all of
the evidence, regardless of its effect on the reviewed finding. Lofton v. Texas Brine
Corp., 720 S.W.2d 804, 805 (Tex. 1986). We may reverse the challenged finding only if
it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust." Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). 

In order to establish tortious interference with an existing contract, a plaintiff must
prove: (1) the existence of a contract subject to interference; (2) a willful and
intentional act of interference; and (3) that such interference proximately caused actual
damages. Texas Beef Cattle v. Green, 921 S.W.2d 203, 210 (Tex. 1995). Once the
existence of a contract is established, we must consider whether or not there was any
interference with that contract. Holloway v. Skinner, 898 S.W.2d 793, 794-95
(Tex. 1995). Interference with a contract is tortious only if it is intentional. Southwestern
Bell Tel. Co. v. John Carlo Tex., Inc., 843 S.W.2d 470, 472 (Tex. 1992). There must
be direct evidence of a willful act of interference. Browning-Ferris, Inc. v. Reyna,
865 S.W.2d 925, 927 (Tex. 1993). The interfering party must know of the existence of a
contract between the plaintiff and a third party or have knowledge of facts that would
lead a reasonable person to conclude that a contract existed. Exxon v. Allsup,
808 S.W.2d 648, 656 (Tex. App.--Corpus Christi 1991, writ denied). This interference must
proximately cause actual damages to be actionable. Hill v. Heritage Resources, Inc.,
964 S.W.2d 89, 123 (Tex. App.--El Paso 1997, writ denied). 

Joseph Linck testified that he spoke with Dick Gage of Martin Marietta about an
exclusive agency agreement. The record reflects that Linck twice sent correspondence to
Martin Marietta attempting to confirm such an agreement. Gage testified that Martin
Marietta received both letters. He could not offer an explanation for Martin Marietta's
failure to respond to either. Gage denied that Martin Marietta contemplated entering into
an agreement with Global. 

There is no writing evidencing either a formal offer or a formal acceptance. However,
the exclusive agency agreement contemplated in the record is a services contract which may
be performed within one year from the time of its making, and no writing is required. See
Montgomery County Hosp. Dist. v. Brown, 965 S.W.2d 501, 503 (Tex. 1998) (services
contract for an indefinite term may be performed within one year and no writing is
required for enforcement). 

The evidence shows that Linck diligently sought to verify the agreement. Martin
Marietta did nothing to refute the agreement, and in fact, unilaterally offered to pay
Global for its lost profits when Rasmussen went directly to Martin Marietta. The conduct
of the parties is consistent with the jury's conclusion that an agreement existed between
Global and Martin Marietta. Rasmussen's first issue is overruled and we need not address
Rasmussen's second issue related to interference with a prospective contract. 

We are left now to consider whether Rasmussen's actions proximately caused Global's
damages. Proximate cause is "that cause, unbroken by any new and independent cause,
which produces injury and without which the injury would not have occurred." Portlock
v. Perry, 852 S.W.2d 578, 583 (Tex.App.--Dallas 1993, writ denied). It consists of
two elements: cause in fact and foreseeability. Travis v. City of Mesquite, 830
S.W.2d 94, 98 (Tex. 1992). "Cause in fact" means that the act or omission was a
substantial factor in bringing about the injury, and without it harm would not have
occurred. Id. "Foreseeability" means that the actor, as a person of
ordinary intelligence, should have anticipated the dangers that his act created for
others. Id. The evidence must demonstrate a clear connection between the
defendant's acts and the plaintiff's damages. 

The record indicates that the agreement was for Global to pay Martin Marietta only for
the stone itself and the cost of delivery. The evidence shows that Global intended to
realize some profit in the resale of the stone to Rasmussen on these costs. Thus, the
damage proximately caused by Rasmussen's interference with the Martin Marietta contract
was the difference between the price Global was going to charge Rasmussen and the cost to
Global of purchasing and having the ballast delivered from Martin Marietta. That margin
was approximately $2.70 per ton of delivered ballast. The record shows that Global sought
additional avenues of profit from charging storage and loadout costs to Rasmussen.
However, such lost profits were unrelated to the agreement between Global and Martin
Marietta. 

The jury awarded $78,000 to Global for loss of profit and lost sales of limestone in
the past and $10,000 for the same in the future. The jury was instructed that loss of
profit was: 

the difference between the cost of the ballast to Global Stone, L.C. and what it would
have sold the ballast for to Rasmussen. Plus the difference between the reasonable and
necessary cost for Global Stone, L.C. to store and load the ballast and what it would have
been a (sic) reasonable charge for storage and loading of the ballast to Rasmussen. 



The evidence shows that the difference between the cost of the ballast to Global and
the price it would have charged Rasmussen for same was approximately $2.70 per ton. It is
undisputed that Martin Marietta paid that amount to Global after it reached the agreement
with Rasmussen. There is no evidence of damages related to the difference between the
resale and sale prices of the ballast. 

Global contends that it was also entitled to recover for the profit it would have made
for storage and loading the ballast for Rasmussen, terms it intended to include in any
agreement with Rasmussen. However, such costs were not subject to the agreement between
Global and Martin Marietta. Instead, they were the subject of continuing negotiations
between Global and Rasmussen. Indeed, the record reflects that after Martin Marietta paid
Global's lost profits, both sides agreed that further contractual terms related to storage
and loading were to be negotiated between Global and Rasmussen. Rasmussen's interference
with the agreement was not the cause-in-fact of Global's lost profits for storage and
loading; Rasmussen's inability to reach an agreement with Global was. There is no evidence
in the record that Rasmussen was in any way limited to contracting with Global for the
purposes of procuring the necessary ballast or that Rasmussen was required to have Global
store and load the stone. Accordingly, the lost profits for storage and loading are not
relevant to our consideration of Rasmussen's liability for tortious interference with the
contract between Global and Martin Marietta. 

Global furthermore contends that it should be able to recover for the limestone removed
from its dock in the process of removing the ballast. The jury was instructed and charged
with regard to these losses, but only in the context of Rasmussen's interference with the
contract between Global and Martin Marietta. The lost limestone is unrelated to any
interference with the agreement in question. Again, Rasmussen's interference with the
contract was not the cause-in-fact of Global's lost limestone. Thus, while Global might
have been able to recover for the lost limestone under a negligence or conversion theory,
it may not make such a recovery based upon interference with a wholly unrelated contract. 

There is no evidence of past damages proximately caused by Rasmussen's interference
with the contract between Global and Martin Marietta. 

The jury also awarded Global $10,000 in future damages. Future damages represent
"the monetary equivalent of the harm of injuries not yet actually sustained by [the
plaintiff], but which [it] will suffer from the date of judgment, forward in time." Missouri
Pac. R. Co. v. Lemon, 861 S.W.2d 501, 529 (Tex. App.--Houston [14th Dist.] 1993, writ
dism'd by agr.). The evidence indicates that Global's losses occurred prior to the time of
judgment, therefore making its loss a past loss, rather than a future loss. There was no
other evidence of any lost sales which might have occurred in the future as a result of
Rasmussen's actions. Accordingly, we find no evidence to support the jury's award of
future damages. 

Rasmussen's third issue is sustained. Because we find no evidence of damages
proximately caused by Rasmussen's interference with the contract, there is no basis for an
award of exemplary damages for interference. 



The judgment of the trial court is REVERSED and judgment RENDERED that Global take
nothing for past, future, or exemplary damages sustained as a result of Rasmussen's
interference. The remainder of the judgment, awarding Global $12,000 for property damage,
is AFFIRMED. 





__________________________________ 

ROBERT J. SEERDEN, Chief Justice 



Do not publish. 

Tex. R. App. P. 47.3. 



Opinion delivered and filed 

this 23rd day of March, 2000.