

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-09-00204-CV

TERRY GLENN AND MONICA
GLENN

APPELLANTS

V.

ROBERT J. PACK, JR.

APPELLEE

----------

FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In eighteen issues, Appellants Terry and Monica Glenn appeal the trial court's judgment awarding Appellee Robert Pack damages and attorneys' fees for his breach of contract and tortious interference with contract counterclaims.

---

[1]*See* Tex. R. App. P. 47.4.

We affirmed in part, reversed and rendered in part, and reversed and remanded in part.

## II. Factual and Procedural History

On March 29, 2007, the Glenns signed a contract (Pack-Glenn contract) to purchase Robert Pack's residence. A temporary residential lease, incorporated into the contract, allowed the Glenns to take possession of the property on March 31. Closing, scheduled for April 4, did not occur.[2] On April 3, Pack entered into a contract (Pack-Funk contract) to sell the property to another couple, the Funks, to close on April 17.

On April 9, the Glenns' then attorney, Daryl Washington, filed a lawsuit against Pack for breach of contract and a motion to temporarily enjoin the property's sale. On April 16, at a hearing on the injunction, Washington learned of the Pack-Funk contract and the April 17 closing date. At 4:30 p.m. on April 16, Washington filed a lis pendens on Pack's residence. On April 17, Washington sent a copy of the lis pendens and a letter asserting that a constructive lien had been placed on Pack's residence to both Pack's real estate agent, Lisa DeLeon, and Pack's attorney, Roger Yale.[3] The April 17 closing did not occur. On May 25, the Funks, citing the lis pendens as the reason, terminated the Pack-Funk

---

[2]Both parties cite the other's breach for the failure to close on the contract.

[3]Pack cites Washington's letter as the basis for his tortious interference claim. Relevant portions of the proceedings and evidence are set forth below.

2

contract.[4]  In response to the Glenns' suit, Pack requested a declaratory judgment that the Glenns breached the Pack-Glenn contract and that the lis pendens constituted a fraudulent filing.  Pack also filed counterclaims for damages and attorneys' fees based on chapter 12 of the civil practice and remedies code, breach of the Pack-Glenn contract, and tortious interference with the Pack-Funk contract.

During the charge conference, the trial court dismissed Pack's chapter 12 and declaratory judgment claims and submitted the breach of contract, tortious interference, and attorneys' fees claims to the jury.  The jury returned a verdict in Pack's favor, awarded him damages on all submitted claims, and awarded Pack appellate, but not trial, attorneys' fees.  The trial court set aside the $0 trial attorneys' fees award and awarded Pack $82,500.  The trial court denied the Glenns' motion for new trial.  This appeal followed.

### III.  Legal and Factual Sufficiency

The Glenns bring eighteen issues on appeal.  In issues eight through fifteen, the Glenns challenge the legal and factual sufficiency of the evidence to support the jury's findings that they breached the Pack-Glenn contract and tortiously interfered with the Pack-Funk contract.  The Glenns also argue that the trial court erred by allowing the acts of an attorney to be imputed to a client and the client's wife (issues one and two); allowing the jury to consider damages on

---

[4]Ultimately, Citimortgage foreclosed on the property and sold it in September 2007.

Pack's tortious interference claim (issue three); failing to apply the one satisfaction rule (issue four); submitting a jury instruction awarding the Glenns' earnest money to Pack as damages (issue five); responding incorrectly to juror's questions during deliberations (issue six); failing to require Pack to segregate his attorneys' fees among his four counterclaims (issue sixteen); and failing to grant a mistrial due either to adverse publicity (issue seventeen) or to the court reporter's actions in taking the record with her on vacation (issue seven). And, in issue eighteen, the Glenns contend that the cumulative impact of these errors requires reversal.

## A. Standards of Review

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1988), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support a finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co., Inc. v. Islas*, 228

4

S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the evidence is so weak, or so contrary to the overwhelming weight of the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

## B. Breach of Contract

To recover for breach of contract, a plaintiff must prove (1) a valid contract, (2) that the plaintiff performed or tendered performance under the contract, (3) that the defendant breached the contract, and (4) that the plaintiff suffered damages as a result of the breach. *See Muenster Hosp. Dist. v. Carter*, 216 S.W.3d 500, 505 (Tex. App.—Fort Worth 2006, no pet.). The parties dispute each other's claim to performance and claim that the other party breached. Both sides also point to the other side's alleged breach as an excuse for their own non-performance. The Glenns argue that Pack breached the contract by failing to deliver possession of the residence on the morning of March 31. Additionally, Monica Glenn claims that she could not have breached the contract because of her limited involvement in the transaction. Pack blames his late departure from

5

the residence on the Glenns' late escrow payment and argues that Terry's text messages and the Glenns' failure to take possession the night of March 31 show that the Glenns unequivocally breached the contract.

### 1. Evidence at Trial

The Pack-Glenn contract called for the Glenns to deposit $50,000 into an escrow account upon contract execution. Terry Glenn testified that the Glenns deposited the funds into escrow after 5:00 p.m. on March 30. Pack testified that late in the afternoon on March 30, prior to the Glenns' escrow fund deposit, because he was unsure of the Glenns' intentions in pursuing the contract, he cancelled his moving company reservation. After Pack received notice of the Glenns' escrow fund deposit, he arranged for a rental truck and enlisted friends and family to assist him in packing and moving.

Beginning at 9:00 a.m. on March 31, the parties, in increasingly frustrated text and email messages, negotiated numerous revised possession deadlines. Around 2:30 p.m., Craig Rozen, acting as Terry's agent, sent an email to Pack declaring the contract "null and void" for Pack's failure to be "off the property Friday night March 30." Despite this email, the parties continued to negotiate possession.

Around 9:30 p.m. on March 31, after a day-long exchange of tense communications, Robert DeLeon sent Terry a text stating that he could take possession and that Terry should bring his checkbook with him. Terry, after another heated exchange, indicated that Pack could "[k]eep [his] [expletive]

6

house! I'll biuld [sic]!" DeLeon replied that Terry could pick up his earnest money from the title company. Terry then responded, "[Expletive] that I might sue and still get the house!" Neither of the Glenns appeared at Pack's house to take possession on the night of March 31.

Terry testified that his text messages and statements were made in frustration; that he did not take possession after it was offered late on March 31 because he needed to be home with his family; that, regardless of his or Rozen's communications on March 31, he still wanted the house; and that on April 1, he attempted to finalize his possession and purchase of Pack's residence. Pack testified that he authorized Robert DeLeon to accept Terry's contract termination. Robert DeLeon testified that on April 1, the day after the Glenns terminated the Pack-Glenn contract, he met with the Funks to negotiate a contract and that the parties signed the Pack-Funk contract on April 3. Robert DeLeon also testified that in the common course of business, possession of the property is due anytime on the date listed in the contract.

Monica testified that she signed, but had not read, the Pack-Glenn contract; that she relied on Terry to handle everything related to the contract; that she did not remember when she realized she would not be moving into the house on March 31; and that, after March 31, she had very little to do with the house. She also stated that she did not attend the closing scheduled for April 4.

7

## 2. Analysis

Terry's text messages amount to an anticipatory repudiation and establish more than a scintilla of evidence to support Pack's breach of contract claim. *See Jenkins v. Jenkins*, 991 S.W.2d 440, 447 (Tex. App.—Fort Worth 1999, pet. denied) (noting repudiation is conduct that shows a fixed intention to abandon, renounce, and refuse to perform the contract). Further, even though Terry indicated that he would take possession, he became angry when asked to bring his checkbook and did not take possession. Thus, Terry cannot claim that his repudiation was due to a genuine misunderstanding as to matters of fact or law. *See id*.

The Glenns rely on Monica's relative lack of involvement to challenge the trial court's finding that Monica breached the Pack-Glenn contract. But a party to a contract is not absolved from the legal effect of the instrument by her willful ignorance of a contract's terms, her failure to affirmatively involve herself, or by relying on the actions of others to fulfill her obligations. *See Hampshire v. Hampshire*, 485 S.W.2d 314, 316 (Tex. Civ. App.—Fort Worth 1972, no writ.) (stating that, absent fraud, a party signing a contract is charged with knowledge of its contents and its legal effect); *see also Vandeventer v. All Am. Life & Cas. Co.*, 101 S.W.3d 703, 712 (Tex. App.—Fort Worth 2003, no pet.) (requiring novation before a party may be relieved of its contractual obligations).

The record shows that Pack's delayed departure was caused by the Glenns' late escrow deposit and supports the conclusion that Pack made every

8

effort to, and did, meet the terms of the contract. Moreover, Rozen's email and Terry's text messages support Pack's claim that Terry terminated, and thus breached, the contract. And even though Monica was not personally involved in the communications or events on March 31, her admitted lack of involvement with the property after March 31 shows an abandonment of her contractual obligations because she did not attempt to continue with the transaction.

Based on the above, we hold that the evidence is legally sufficient because the evidence supporting the jury's verdict as to the Glenns' breach of contract is more than a mere scintilla. *See Uniroyal*, 977 S.W.2d at 334. Furthermore, we conclude that the evidence is also factually sufficient because, considering all the evidence in the record pertinent to this finding, it is not so weak, or so contrary to the overwhelming weight of the evidence, that the jury's answer should be set aside and a new trial ordered. *See Pool*, 715 S.W.2d at 635; *VingCard a.s. v. Merrimac Hospitality Sys., Inc.,* 59 S.W.3d 847, 860–61 (Tex. App.—Fort Worth 2001, pet. denied).

Accordingly, we overrule the Glenns' eighth, ninth, tenth, and eleventh issues.

## C. Tortious Interference

To recover for tortious interference with contract, a plaintiff must show (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) that was a proximate cause of the plaintiff's damages; and (4) actual damage or loss. *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210

9

(Tex. 1996) (op. on reh'g).  The record supports the jury's determination that the Pack-Funk contract was valid and that Pack suffered damages by the contract's termination. Therefore, we must consider whether the Glenns' actions were willful and intentional and whether their actions were the proximate cause of Pack's damages.

### 1. Evidence at Trial

At 4:30 p.m. on April 16, the Glenns' then attorney, Daryl Washington, filed a lis pendens on Pack's residence.[5]  On April 17, Washington sent a copy of the lis pendens and a letter stating that a "constructive lien" had been placed on Pack's property to Pack's attorney, Yale, and to Lisa DeLeon.  Washington's letter also stated that Lisa and Yale were "required to give any and all potential purchasers notice of any liens on the property."  On May 25, the Funks terminated the Pack-Funk contract because Pack was "unable to remove the [l]is [p]endens from the title to the property. . . ."  The Funks' termination letter does not mention Washington's letter or a "constructive lien."

Pack testified that Lisa told him that the Funks cancelled the Pack-Funk contract because a lien had been placed on Pack's residence and that Washington, in an effort to stop Pack from selling to the Funks, had represented himself as a member of Pack's team in a call to the Funk's title company.  Pack

---

[5]Washington learned of the Pack-Funk contract and scheduled closing at the April 16 hearing on the Glenns' motion to enjoin the sale of Pack's residence.

also stated that Washington sent a copy of the April 17 letter to him and to the Funk's title company.[6]

Lisa testified that she never met with the Funks, that her husband wrote the Pack-Funk contract, that her knowledge of the Pack-Funk contract came from her husband, that "there was a lien on the property," that liens create a cloud on the title, and that "if there was any type of lien or anything attached to the property, you cannot sell it." Lisa did not testify about the phone call that, per Pack's testimony, Washington made to the Funks' title company.

Robert DeLeon testified that he thought the lis pendens was filed as a "lis pendens lien."[7] He also alternatively stated that (1) the "lis pendens" and (2) the "lien" kept the Funks from closing on Pack's house.

The Funks, a representative of the Funks' title company, and Washington did not testify at trial.[8]

## 2. Proximate Cause

Proximate cause is that cause, unbroken by any new and independent cause, that produces injury and without which the injury would not have occurred.

---

[6]The copy of Washington's letter that Pack entered into evidence is addressed to Yale and lists Lisa DeLeon as the only party copied.

[7]The copy of the filed document entered into evidence states that it was filed as a "lis pendens," not as a "lis pendens lien." The document requests that the "court impose a constructive lien on" Pack's residence, but it does not assert that a constructive lien, in fact, existed.

[8]Both Funks were subpoenaed but not called to testify.

11

*Portlock v. Perry,* 852 S.W.2d 578, 583 (Tex. App.—Dallas 1993, writ denied); *see also Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 126 (Tex. App.—El Paso 1997, pet. denied) (noting that the classic proximate cause test applies to tortious interference cases). It consists of two elements: cause in fact and foreseeability. *Portlock*, 852 S.W.2d at 583. Both elements must be present and may be proven by direct or circumstantial evidence, but proximate cause may not be established by mere guess or conjecture. *Id*. "Cause in fact" means that the act or omission complained of was a substantial factor in producing the injury and without it no harm would have resulted. *Id.* "Foreseeability" means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his act created for others. *Id.*

A lis pendens is available to a party seeking affirmative relief during the pendency of an action involving title to real property. Tex. Prop. Code Ann. § 12.007(a) (Vernon 2004). A lis pendens does not prevent conveyance; it merely puts the purchaser on notice as to the status of the land. *See Collins v. Tex Mall, L.P.*, 297 S.W.3d 409, 418 (Tex. App.—Fort Worth 2009, no pet.) As part of the judicial process, a lis pendens enjoys an absolute privilege and cannot serve as a basis for a tortious interference claim. *See Chale Garza Invs., Inc. v. Madaria*, 931 S.W.2d 597, 600–01 (Tex. App.—San Antonio 1996, writ denied).

### 3. Analysis

Pack based his tortious interference claim on Washington's letter, arguing that the "constructive lien" language constituted a second, unstated cause of the

Funks' contract termination. Prior to the jury charge, the Glenns moved for an instructed verdict on Pack's tortious interference claim. The trial court acknowledged the lis pendens' absolute privilege,[9] but it denied the motion.

Considering the evidence favorable to the finding if a reasonable factfinder could, we cannot say that more than a scintilla of evidence supports the trial court's denial of an instructed verdict on Pack's tortious interference claim. Both Lisa DeLeon and Pack testified that they had no personal knowledge of the reason the Funks cancelled the Pack-Funk contract; their testimonies cannot serve as basis for Pack's cause of action. *See* Tex. R. Evid. 602; *In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 440 (Tex. 2007) (noting that lay witnesses may only testify about matters within their personal knowledge); *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 937–38 (Tex. 1998) (indicating that a witness' testimony unsupported by personal knowledge was "mere speculative, subjective opinion of no evidentiary value."). Pack's testimony about what Lisa told him about Washington's phone call to the Funks' title company is likewise speculative because Pack did not have personal knowledge of Washington's actions. *Wal-Mart Stores, Inc.*, 968 S.W.2d at 938; *Savage v.*

---

[9]The jury charge's relevant portion reads:

The filing of a [l]is [p]endens is absolutely privileged and can form no basis for a claim of interference. A [l]is [p]endens is a court document that places potential purchasers on notice that there is a claim pending in court which would entitle the person bringing the claim to the property.

*Psychiatric Inst. of Bedford, Inc.*, 965 S.W.2d 745, 753–54 (Tex. App.—Fort Worth 1998, pet. denied).

Robert DeLeon's testimony amounted to his speculation as to why the Funks terminated the contract and cannot ascribe intent or motive to the Funks. *See Armstrong-Berger, Inc. v. Dickson/Wells Architects, Inc.*, No. 05-94-01225-CV, 1995 WL 464283, at *2 (Tex. App.—Dallas July 31, 1995, writ dism'd w.o.j.) (not designated for publication) (stating that a "witness cannot testify to another person's intent or motive"); *Found. Reserve Ins. Co. v. Starnes*, 479 S.W.2d 330, 334 (Tex. Civ. App.—Fort Worth 1972, no writ) (indicating a witness should neither testify to the significance or propriety of another's conduct nor be permitted to state his opinion with respect to another's intent, motive, or purpose); *Medina v. Sherrod*, 391 S.W.2d 66, 69 (Tex. Civ. App.—San Antonio 1965, no writ) (same); *Danaho Ref. Co. v. Pan Am. Petroleum Corp.*, 383 S.W.2d 941, 946 (Tex. Civ. App.—Waco 1964, writ ref'd n.r.e) (stating that proximate cause of damage is not ordinarily the proper province of lay opinion evidence in tort cases). Therefore, Robert DeLeon's testimony cannot show that the "constructive lien" language was a substantial factor in bringing about the Funks' contract termination and that without it the Funks would not have cancelled the contract.

This leaves Pack's testimony that both he and the Funks' title company received a copy of Washington's letter, but it is not enough to show more than a scintilla of evidence ascribing a secondary reason to the Funks' actions in light of

14

the reason stated in the Funks' termination letter. The Funks' termination letter conclusively established that the Funks cancelled the Pack-Funk contract because Pack failed to remove the lis pendens. The Funks' actions were a natural and logical result of a lis pendens filing. *Cf. King v. Tubb*, 551 S.W.2d 436, 444 (Tex. Civ. App.—Corpus Christi 1977, no writ.) (stating that a lis pendens' purpose is to notify a party of a competing claim to real property). Thus, Pack failed to show as a matter of law that the constructive lien language in Washington's letter was a cause in fact of the Funks' contract termination. By extension, Pack has failed to prove that the Glenns proximately caused the termination of the Pack-Funk contract.

Having concluded that Pack failed to meet the burden of proving proximate cause, we sustain the Glenns' twelfth and thirteenth issues and reverse that portion of the trial court's judgment on the jury's finding that the Glenns tortiously interfered with the Pack-Funk contract.[10]

## D. Attorneys' Fees

Glenn complains that Pack failed to properly segregate attorneys' fees. Pack's attorney testified that he and Pack had a contingent fee agreement and that he had incurred attorneys' fees of approximately $92,500 throughout preparation of the entire case for trial. Of that $92,500, Pack's attorney testified

---

[10]Based on our disposition of the Glenns' twelfth and thirteenth issues, we do not reach the Glenns' first, second, third, fourth, fourteenth, fifteenth, and eighteenth issues. Tex. R. App. P. 47.1.

that approximately $10,000 was incurred in furthering Pack's tortious interference claim, and that the remaining $82,500 was incurred prosecuting the remaining claims for breach of contract, declaratory judgment, and fraudulent filing (Chapter 12). Pack's attorney did not segregate the $82,500 between the breach of contract, declaratory judgment, and fraudulent filing claims.

The trial court dismissed Pack's claims for declaratory judgment and fraudulent filing before sending the tortious interference and breach of contract claims to the jury. The jury found for Pack on both claims, but it awarded Pack $0 for his pretrial and trial attorneys' fees. The trial court granted judgment notwithstanding the verdict (JNOV) on the jury's pretrial and trial amount of $0, replacing it with $82,500.

A trial court may disregard a jury verdict and render a JNOV if no evidence supports the jury finding on an issue necessary to liability or if a directed verdict would have been proper. *See* Tex. R. Civ. P. 301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); *Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991). A directed verdict is proper only under limited circumstances: (1) when the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent; or (2) when the evidence is insufficient to raise a material fact issue. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Farlow v. Harris Methodist Fort Worth Hosp.*, 284 S.W.3d 903, 919 (Tex. App.—Fort Worth 2009, pet. denied). To determine whether the trial court erred by rendering a JNOV, we

16

view the evidence in the light most favorable to the verdict under the well-settled standards that govern legal sufficiency review. *See Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003).

The $0 award is clearly wrong because the jury found both tortious interference and breach of contract. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 2008) (stating that a person "may recover" reasonable attorneys' fees, in addition to the amount of a valid claim, if the claim is for an oral or written contract); *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009) (indicating that if attorneys' fees are proper under 38.001(8), the trial court has no discretion to deny them); *Cale's Clean Scene Carwash, Inc. v. Hubbard*, 76 S.W.3d 784, 787, 787 n.4 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (indicating that attorneys' fees are distinct from damages and that attorney's comment in opening statement that he was willing to let the jury decide whether he ought to get attorneys' fees has no bearing on statutorily awarded attorneys' fees in breach of contract claim). However, Pack's attorney only segregated $10,000 for the tortious interference claim. Thus, we cannot say what amount of attorneys' fees beyond the $10,000 that Pack would be entitled to because Pack's attorney did not otherwise segregate the fees. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006) (requiring fee claimants to segregate fees between claims for which they are recoverable and for which they are not). When, as here, segregation is required, Pack's failure to segregate fees does not mean that he cannot recover any fees; evidence of unsegregated

17

attorneys' fees for the entire case is some evidence of what the segregated amount should be, and remand is required to calculate the segregated award. *Id*. at 313–14.

Therefore, we sustain the Glenns' sixteenth issue and reverse and remand for further proceedings on the issue of attorneys' fees.[11]

## IV. Trial Court's Actions

In issues five, seven, and seventeen, the Glenns complain that the trial court abused its discretion by allowing the jury to award Pack the Glenns' earnest money and by failing to grant a mistrial. We will consider issue seven, in which the Glenns assert that the unavailability of the reporter's record warranted a mistrial, with issue six, in which they allege the trial court erred in its responses to questions passed by the jury after submission of the case.

### A. Standard of Review

To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled

---

[11]We express no opinion on Clause 17 of the Pack-Glenn contract relative to any claim of contractually-based attorneys' fees.

18

differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 932 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620.

An abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence. *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding). Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

## B. Jury Instruction on Earnest Money

In issue five, the Glenns argue that the Pack-Glenn contract prohibited the jury from awarding the Glenns' earnest money to Pack as compensation for his breach of contract claim.

To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a). If a party fails to do this, error is not preserved, and the complaint is waived. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g). The objecting party must get a ruling from the trial court. This ruling can be either express or implied. *Frazier v. Yu*, 987 S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet. denied).

19

The Glenns contend that the judgment is defective because it awards money not properly before the court. But the Glenns have not preserved this contention for our review because even though they initially objected to the instruction in the charge conference, the Glenns later agreed that the jury could decide the issue. At the end of the parties' discussions on the breach of contract damages instruction, the Glenns waived their prior objection to the inclusion of the escrow funds when they narrowed the focus of their objection to the issue of treble damages:

> The jury can decide [if Pack] gets the $50,000 [escrow funds]. That's fine. If that's what they decide, we will have to accept it. But they should not have then the right to say we will give you three times the amount when they did not do that portion . . . . They should not get the issue of giving them triple damages . . . . That's what we're talking about. That's the only thing I am talking about.

*See* Tex. R. App. P. 33.1(a); Tex. R. Civ. P. 274 (requiring objecting party to raise all objections to the charge prior to submission of the charge to the jury); *Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804, 825 (Tex. App.—Dallas 2003, pet denied) (indicating alleged error in jury charge must be preserved by distinctly designating the error and the grounds for objection).

Because the Glenns failed to preserve this objection, we overrule their fifth issue.

## C. Response to Jury Questions and Absent Reporter's Record

During deliberations, the jury asked for a list describing each compact disc containing the parties' text and audio messages entered into evidence. Because

20

no list had been entered into evidence, the trial court denied the request. The jury then asked for a copy of Craig Rozen's testimony so they could create a timeline. At the time of the jury's request, the court reporter's transcript was unavailable.[12] The trial court did not abate deliberations; instead, the court instructed the jury that if they disagreed as to specific testimony, the jury could request to have that testimony read to them. The Glenns objected to the trial court's responses to the jury, and they requested that deliberations be abated until the court reporter returned. The trial court overruled the Glenns' objection and denied their abatement request. The jury returned to deliberations without asking any additional questions about the compact discs or Rozen's testimony.

There is no evidence that the jury disagreed on specific aspects of Rozen's testimony. Thus, the trial court properly responded to the jury's questions. *See* Tex. R. Civ. P. 287; *Bellino v. Comm'n for Lawyer Discipline*, 124 S.W.3d 380, 390 (Tex. App.—Dallas 2003, pet. denied) (noting that the jury must disagree before witness testimony can be read back to the jury)*; see also Caterpillar Tractor Co. v. Boyett*, 674 S.W.2d 782, 793 (Tex. App.—Corpus Christi 1984, no pet.) (stating that rule 287 does not require reading back witness testimony because some of the jurors have failed to remember the testimony). Having concluded that the trial court did not abuse its discretion in its responses, we overrule the Glenns' sixth and seventh issues.

---

[12]The court reporter had gone on vacation out of state, taking her computer containing the trial record with her.

21

**D. Adverse Publicity**

In issue seventeen, the Glenns argue that the trial court erred by denying their motion for mistrial due to adverse publicity.

Texas Rule of Civil Procedure 324 requires that to appeal a complaint of jury misconduct, a party must first raise the point in a motion for new trial. *See* Tex. R. Civ. P. 324(b)(1), 327(a),(b). The Glenns failed to raise the issue in either their motion for new trial or in the hearing on the motion. Thus, we overrule the Glenns' seventeenth issue. *See* Tex. R. App. P. 33.1; Tex. R. Civ. P. 324(b)(1); *Weaver v. Westchester Fire Ins. Co.*, 739 S.W.2d 23 (Tex. 1987).

**V. Conclusion**

We sustain the Glenns' twelfth, thirteenth, and sixteenth issues, overrule their fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and seventeenth issues, and decline to reach the remaining issues. *See* Tex. R. App. P. 47.1. Therefore, we affirm the portion of the trial court's judgment that the Glenns breached the Pack-Glenn contract and award of the $50,000 escrow funds, reverse the trial court's judgment pertaining to Pack's tortious interference claim and render judgment that Pack take nothing on his tortious interference claim, and remand this case to the trial court for further proceedings to determine attorneys' fees.

BOB MCCOY
JUSTICE

PANEL: LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

DELIVERED: January 13, 2011

22